## Case No. 5,797.

### In re GREGG.

[4 N. B. R. 456 (Quarto, 150).]1

District Court, D. California. Nov. 26, 1870.

BANKRUPTCY—PREFERENCE — KNOWLEDGE OF INSOLVENT CONDITION BY DEBTOR.

1. Where an insolvent debtor executed a bill of sale to a creditor who had obtained the levy of an attachment after notice of the debtor's insolvency, the same was a violation of the bankrupt act [of 1867 (14 Stat. 517)].

2. Its inevitable effect was to give a preference. Although insolvency exists, yet, if the debtor honestly believes he shall be able to go on in his business, and with such a belief pays a just debt without a design to give a preference, such payment is not fraudulent, although bankruptcy should subsequently ensue.

3. If the debtor is cognizant of his own insolvent condition, and expects to stop payment, and makes a payment, or gives security to a creditor for a just debt, with a view to give a preference, such payment, or giving of security, is fraudulent as against creditors. and property thus transferred may be recovered by the assignee in bankruptcy, and the debtor's discharge will be denied.

In bankruptcy.

HOFFMAN, District Judge. This is a proceeding brought by the assignee to recover certain property alleged to have been transferred by the bankrupt in fraud of the act. On the 2d September, Knox, to whom the bankrupt was indebted for a balance due on two promissory notes, levied an attachment on all the property of the latter, consisting of a piece of land, and a house in which the bankrupt resided, and a saloon, stock of liquors, fixtures, etc. On the same day, Knox and the bankrupt entered into an agreement

2 [From 3 N. B. R. 529 (Quarto, 131).]
1 [Reprinted by permission.]

by which the former was to execute a bill of sale to Knox for the saloon, stock in trade, etc., in payment of the notes, and the latter was to discontinue his suit, and release the house and land from the attachment. This was, accordingly, done, and the possession of the saloon, etc., delivered to Knox, who surrendered to the bankrupt his notes. Very soon afterwards the bankrupt declared the real property a homestead under the laws of the state. At the time of these transactions the bankrupt was largely insolvent, and of this the creditor was informed a few days before the attachment was levied. There can be no doubt that this payment by the bankrupt was a violation of the act. Its inevitable effect was to give a preference to one creditor at the expense of all the rest, and to appropriate to the satisfaction of his debt a great part of the property of a person who knew himself to be hopelessly insolvent. "The policy and aim of the bankrupt laws," says the supreme court, "are to compel an equal distribution of the assets of the bankrupt among all his creditors. Hence, when a merchant or trader, by any of these tests of insolvency, has shown his inability to meet his engagements, one creditor cannot, by collusion with him, or by a race of diligence, obtain a preference to the injury of others. Such conduct is considered a fraud on the act, whose aim it is to divide the assets equally, and therefore equitably." Shawham v. Wherritt, 7 How. [48 U. S.] 744. It is urged that to constitute an act of bankruptcy of the kind under consideration, it is necessary that the intent to give a preference should exist, and that this intent cannot be inferred from the mere fact of actual insolvency. The law on this point is well laid down in Jones v. Howland, 8 Metc. [Mass.] 377. "The result of these cases," says the court, "is the drawing of a distinction between the actual insolvency and a contemplated bankruptcy, between the payment of a just debt, in the course of business, though insolvency exists, and is known to the insolvent, and the design to give a preference in view of stopping payment. And, in view of all the authorities, we hold the law to be this—that, although insolvency in fact exists, yet, if the debtor honestly believes he shall be able to go on in his business, and with such a belief pays a just debt, without a design to give a preference, such payment is not fraudulent, though bankruptcy should afterwards ensue. And, on the other hand, if the debtor, being insolvent, and knowing his situation, and expecting to stop payment, shall then make a payment, or give security to a creditor for a just debt, with a view to give him a preference over the general creditors, such payment, or giving security, is fraudulent as against the creditors, and property that is transferred in making such payment, or giving the security, may be recovered by his assignee, and the debtor will not be entitled to a discharge under the statute.

It rests upon the intent with which the act was done, and the intent is to be proved as a fact, either by direct evidence, or as the necessary and certain consequence of other facts clearly proved." These observations are cited with approval in Morgan, Root & Co. v. Mastick [Case No. 9,803], and in Doan v. Compton [Id. 3,940], and the same principles are substantially laid down in numerous cases. Farrin v. Crawford [Id. 4,686]; Wadsworth v. Treadwell [Id. 17,032]; Langley v. Perry [Id. 8,067.] It will be perceived that, in the case at bar, all the circumstances exist, which in the above extract are supposed to furnish clear evidence of a fraudulent intent. The debtor was insolvent, and perfectly aware of his situation. His transfer to the creditor included his whole stock in trade. It at once deprived him of the means of conducting his business, and involved the necessity of an immediate stoppage. As his entire property had been seized, the effect of the payment in full to the attaching creditor, was to liberate his house and land from the attachment, and to put it in his power, unless prevented by a proceeding in bankruptcy, to declare it a homestead, and withdraw it from the reach of his creditors. This he attempted to do, and, whether successful or not, the attempt shows an intention to satisfy one creditor's demand by applying to its payment all the property of the debtor, which he intended to be appropriated to the payment of his debts. The 35th section of the act provides that if the transfer is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud. The burden of proof is thus thrown upon the bankrupt to repel the presumption of fraud raised by the law. The circumstances of the case, so far from repelling, strengthen the presumption, to the exclusion of any other hypothesis. It being clear, then, that the bankrupt intended to give the preference which was the necessary consequence of the transfer, it remains to inquire whether the person receiving it had reasonable cause to believe that a fraud on the act was intended. He knew that the debtor was insolvent. He knew that he himself had attached all his property, and that the debtor had committed an act of bankruptcy by the non-payment of his commercial paper for more than fourteen days. He knew that the inevitable consequence of the transfer was to break up the business of the debtor, and that it was made in view of stopping payment. Under these circumstances he not only had reasonable cause to believe, but he must have known that the payment to him was a preference by an insolvent debtor, and was necessarily intended to be such. It was, therefore, a fraud on the bankrupt act. I am, therefore, of opinion that the payment and transfer were void, and the property transferred or its value can be recovered by the assignee for the benefit of the estate, as provided in the bankrupt act.